[This opinion has been published in *Ohio Official Reports* at 69 Ohio St.3d 693.]

THE STATE EX REL. DOMJANCIC, APPELLEE AND CROSS-APPELLANT, *v.*

INDUSTRIAL COMMISSION OF OHIO; ITT GRINNELL CORPORATION,

APPELLANT AND CROSS-APPELLEE.

[Cite as *State ex rel. Domjancic v. Indus. Comm.*, 1994-Ohio-95.]

*Workers' compensation—Application for permanent total disability compensation denied—Industrial Commission exempt from formal rules of evidence—Commission's reliance on medical report not an abuse of discretion, when—Commission's failure to consider vocational report not an abuse of discretion, when—Cause returned to commission for further consideration and an amended order, when.*

(No. 93-1629—Submitted May 16, 1994—Decided July 27, 1994.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No. 92AP-37.

―――――――――――

{¶ 1} Claimant, Joseph Domjancic, the appellee and cross-appellant, sustained three injuries, during the period 1970-1981, in the course of and arising from his employment with appellant and cross-appellee, ITT Grinnell Corporation. The most severe injury was allowed for "sprain of back and right leg, herniated disc L4 on the right, herniated disc L5 on the right and aggravation of pre-existing arthritis back." On March 17, 1989, claimant moved the Industrial Commission of Ohio for permanent total disability compensation.

{¶ 2} Attending physician Robert F. Naples stated that claimant could not perform sustained remunerative employment. Commission specialist Dr. Joseph I. Gonzalez, upon examination, concluded:

{¶ 3} "From the orthopaedic point of view, it is my opinion that given the medical status of the allowed conditions, the patient presently is capable of

sustained remunerative employment due to the medical impairments resulting from the allowed conditions. It is my opinion that this patient has a 16% permanent partial impairment of the whole person for the allowed conditions recognized in this claim. It is my opinion that the patient is not a good candidate for physical rehabilitation. He has a very small frame (small individual) and he has reached advanced age and vocational rehabilitation is not worth while [sic] with a person approaching advanced age and without a high school diploma."

**{¶ 4}** Claimant's motion was heard on May 20, 1990. The application was apparently held in abeyance and claimant was ordered to submit to further medical examination. Meanwhile, on June 6, 1990, claimant submitted an evaluation from vocational consultant John Ruth. The report stated in relevant part:

"This man's age (62 years) would place him in the category of closely approaching retirement age. * * * This man possesses no technical skills which could be saleable in regard to competitive employment acquisition.

"This man did not complete high school, as he finished only the ninth grade. * * * Overall, this man's educational capabilities were not at a level which could be used or considered an asset for competitive employment.

"In general, Mr. Domjancic was noted to possess significant physical limitations which would not allow him to perform work for an eight hour day, or perform work in various positions. He did appear limited to sedentary work in durations of less than four hours (indicating unemployability). This man's educational capabilities were reviewed in order to assess saleable skill development, however, extremely limited educational skills were noted. Because this man did not possess sufficient physical capabilities to perform even the physical demands of sedentary or light work, nor did he possess educational capabilities which would allow him to perform technical work tasks, it is this evaluator's opinion that this man is unable to seek or sustain remunerative employment at this time."

**{¶ 5}** On July 9, 1990, commission specialist Dr. David M. Baroff concluded:

"This man has allowances for herniated lumbar discs and contusion to the left knee.  In my opinion, the symptoms related to these conditions are related to his work accidents and the conditions are permanent.  He is not a candidate for rehabilitation nor in my opinion is he a candidate for any sustained remunerative employment at this time.  Based on today's examination, I feel he has a permanent partial impairment of 25% of the whole person."

**{¶ 6}** The commission denied permanent total disability compensation as follows:

"The reports of Doctors Naples, Gonzalez and Baroff were reviewed and evaluated.

"This order is based particularly upon the reports [*sic*] of Doctors [*sic*] Gonzalez, a consideration of the claimant's age, education, work history and other disability factors including physical, psychological, * * *[.]

"The claimant is approximately 62 years of age with ten years of education.  The claimant's work experience includes machine operator and welder.  Dr. Gonzalez states the allowed conditions do not prevent claimant from engaging in sustained remunerative employment.  The doctor notes the claimant's size (he appears to be a pituitary dwarf) and psychiatric problems would interfere with his ability to work."

**{¶ 7}** Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, claiming that the commission abused its discretion in denying permanent total disability compensation.  The appellate court held that the commission abused its discretion in failing both to consider Ruth's vocational report and issue an order that satisfied *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245.

**{¶ 8}** This cause is now before this court on appeal and cross-appeal as of right.

_____

*Weiner & Suit Co., L.P.A.* and *Dale A. Nowak*, for appellee and cross-appellant.

*Schottenstein, Zox & Dunn*, *Robert D. Weisman* and *William J. Barath*, for appellant and cross-appellee.

_____

***Per Curiam.***

**{¶ 9}** Three questions are presented: (1) Did the commission abuse its discretion by relying on Dr. Gonzalez's report? (2) Did the commission abuse its discretion in not considering Ruth's vocational evaluation? and (3) Does the order satisfy *Noll*? For the reasons to follow, we answer "no" to each question.

**{¶ 10}** Claimant advances four challenges to Dr. Gonzalez's report, none of which has merit. Claimant initially claims that the order violates Evid. R. 703. R.C. 4123.10, however, specifically exempts the commission from formal rules of evidence. See, also, *State ex rel. Roberts v. Indus. Comm.* (1984), 10 Ohio St.3d 1, 10 OBR 1, 460 N.E.2d 251.

**{¶ 11}** Claimant also alleges that the report is irreparably flawed because it is based on a misconception of claimant's former job duties. While the report is indeed marred in this respect, that flaw is not fatal. The only relevant inquiry in any permanent total disability determination is not claimant's ability to return to his former position, but is instead claimant's ability to do *any* sustained remunerative employment. Dr. Gonzalez's misimpression notwithstanding, he specifically stated elsewhere in his report that claimant could engage in sustained remunerative employment.

**{¶ 12}** Claimant's third contention attempts to interject *res judicata* into this controversy. Under the caption "IMPRESSION," Dr. Gonzalez noted "[n]o

evidence of a herniated disc L4-5 on the right." Claimant argues that because herniated discs L4 and L5 on the right were previously allowed in the claim, Dr. Gonzalez's statement was improper under *res judicata*. This argument, too, fails.

{¶ 13} Dr. Gonzalez's report, at the outset, outlines *all* allowed conditions, substantiating his awareness of what the claimant's recognized conditions were. That the doctor, upon examination, found no evidence of a herniated disc, does not amount to a repudiation of the allowance. As the referee insightfully stated:

"Dr. Gonzalez was not required to merely parrot the allowed conditions as his medical findings. It was Dr. Gonzalez's duty to report his actual clinical findings. Obviously, the doctrines of *res judicata* and *collateral estoppel* do not apply to limit what a doctor may find during his examination."

{¶ 14} Finally, claimant asserts that the commission inherently rejected Dr. Gonzalez's report by ordering a later examination by Dr. Baroff. This action, per claimant, barred the commission from later relying on Dr. Gonzalez's report. This claim lacks merit as well.

{¶ 15} The "implicit rejection" concept articulated in *State ex rel. Zamora v. Indus. Comm.* (1989), 45 Ohio St. 3d 17, 543 N.E.2d 87, applies where the commission makes a finding that is necessarily premised on a rejection of a given doctor's conclusion. Once the commission has done so, it cannot revive that report as evidence supporting a later finding.

{¶ 16} No finding or order arose between the dates of the Gonzalez and Baroff reports, distinguishing this case from *Zamora*. Equally important, the commission's prerogative to determine that further medical evidence is needed must not amount to a merit adjudication of other medical reports already in file. To so hold forces the commission to forego obtaining further medical opinions if it desires to use previously submitted evidence as well. This, in turn, infringes on the commission's right under Ohio Adm. Code 4121-3-09(B)(3) to demand a medical

exam of claimant "*at any point* in the processing of an application for benefits." (Emphasis added.)

{¶ 17} In summary, the evidentiary flaws directed at Dr. Gonzalez's report lack persuasiveness. The commission's reliance on his report was not, therefore, an abuse of discretion.

{¶ 18} The challenge by the employer, ITT, is directed at the commission's treatment of Ruth's vocational report. Because the commission enumerates not only the permanent total disability evidence relied on, but also that which was merely considered, the omission of Ruth's report from the list compels the conclusion that the report was not considered. Under these facts, however, no abuse of discretion has occurred.

{¶ 19} The appellate court correctly held that *State ex rel. Cupp v. Indus. Comm.* (1991), 58 Ohio St.3d 129, 568 N.E.2d 1214, prohibits the commission from summarily ignoring vocational reports. However, because claimant did not submit Ruth's report until *after* his permanent total disability hearing, *State ex rel. Cordray v. Indus. Comm.* (1990), 54 Ohio St.3d 99, 561 N.E.2d 917, controls, and not *Cupp*.

{¶ 20} *Cordray* reasoned that because Ohio Adm. Code 4121-3-09(C)(5) gave the commission the discretion to grant or deny additional time for hearing preparation, "the commission must also have the discretion to accept or reject evidence submitted thereafter." *Id.* at 101, 561 N.E.2d at 919. In *Cordray*, as here, this discretion was not changed by the commission's decision to consider the report of its own specialist, which was also obtained after the hearing. We stressed that because Ohio Adm. Code 4121-3-09(B)(3) authorized the commission to order a medical examination *at any point* in processing the claim, the commission was always free to consider reports from its own medical staff.

{¶ 21} Ohio Adm. Code 4121-3-09(C)(5) provides that "[a]t hearings with notice * * * the parties shall be *fully* prepared to fully present their respective positions * * *." (Emphasis added.) Claimant had fourteen months between his

application and the hearing to obtain this evidence. Instead, claimant waited until ten days before the hearing before even submitting to an evaluation by Ruth. Any hardship caused by omission of this report is one of claimant's making. Accordingly, the commission did not abuse its discretion in failing to consider Ruth's report.

{¶ 22} Turning to the final question, presented by ITT, we find that the "explanation" surrounding the permanent total disability denial is a recitation of factors that do not readily suggest work amenability. *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666, recently held that a hodgepodge of observations directed at claimant's nonmedical factors did not constitute an adequate explanation. *Gay* accordingly negates ITT's objection to the appellate court's finding of *Noll* noncompliance.

{¶ 23} *Noll* noncompliance presents two remedial options. The appellate court elected to return the cause for further consideration and amended order. Claimant presses for the other alternative -- a writ ordering a permanent total disability award pursuant to *Gay*. We affirm the appellate court's disposition. Generally, in cases where *Gay* relief has been recommended, the commission's order has coupled vocationally unfavorable evidence with medical evidence that assessed a relatively high degree of physical impairment. This case does not fit that profile. Cf. *State ex rel. Koonce v. Indus. Comm.* (1994), 69 Ohio St.3d 436, 633 N.E.2d 520.

{¶ 24} Accordingly, we vacate the commission's order and return the cause to it for further consideration and amended order.

{¶ 25} The portion of the appellate decision that ordered the commission to consider Ruth's report is reversed. The remainder of the judgment is affirmed.

*Judgment reversed in part*

*and affirmed in part.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK and PFEIFER, JJ., concur.

F.E. SWEENEY, J., dissents and would reverse on authority of *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666.

—————————————